UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD THOMAS ROMERO-OSTOLAZA, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 03-1890 (RCL) ) |
| THOMAS RIDGE, Secretary, Department of Homeland Security | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Before the court is Defendant's Motion [12] to Dismiss Plaintiff's First Amended Complaint, or in the Alternative, for Summary Judgment.[1]  Plaintiff, appearing pro se, filed a First Amended Complaint that contains two causes of actions.  First, plaintiff alleges that the defendant discriminated against him on the basis of race when his application for promotion to GS 14 was denied.  Second, plaintiff alleges that the defendant retaliated against him for filing a formal complaint and seeking the aid of a congressman and a senator concerning defendant's denial of promotion.

For the reasons set forth herein, defendant's motion will be granted in part and denied in part.

---

[1] Also before the court, by incorporation, are several of defendant's arguments set forth in an earlier motion to dismiss, which was fully briefed before plaintiff filed his First Amended Complaint.  For citation purposes, the earlier motion to dismiss will be considered the "First Mot." and the present motion to dismiss will be considered the "Second Mot."

1

I.      LEGAL STANDARD

     A.      Motion to Dismiss

A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In reviewing a motion to dismiss, the Complaint's factual allegations must be presumed true and all reasonable inferences drawn in plaintiff's favor; however, the court need not "accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Where matters outside the pleadings are presented to the court in support of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), such motion shall be treated as a motion for summary judgment and disposed of under Fed. R. Civ. P. 56. Fed. R. Civ. P. 12. Taylor v. FDIC, 132 F.3d 753, 762 (D.C. Cir. 1997).

     B.      Summary Judgment

Summary judgment is appropriate when the motion papers, affidavits, and other submitted evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Whether a fact is "material" is determined in light of the applicable substantive law invoked by the action. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In light of the applicable substantive law, a "genuine issue of material fact" is a fact that is determinative of a claim or defense, and therefore, affects the outcome of the case.

See Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 248.  The moving party bears the initial burden of demonstrating that no genuine issues of material fact are in dispute.  Upon such a showing, the burden then shifts to the non-moving party to demonstrate that genuine issues of material fact are in dispute.  The Court is precluded from weighing evidence or finding disputed facts and must draw all inferences and resolve all doubts in favor of the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

II.  FACTUAL BACKGROUND

Though this case involves a complex web of interactions between plaintiff, defendant, the administrative machinery, and the arbitration process, the pertinent undisputed facts for this motion are not overwhelming.

From August of 1998 through January of 2001, plaintiff, a Hispanic, worked under Myles B. Harmon in the International Agreements group of the Office of Regulations and Rulings ("OR&R"), part of the United States Customs Office, which in turn is part of the Department of Homeland Security.  In January of 2001, plaintiff switched into the Value Branch, another group within the OR&R, and began working under Virginia Brown.  Plaintiff was then a GS-13 level attorney.

On August 28, 2001, plaintiff submitted an application for promotion to GS-14 under the non-competitive promotion plan promulgated on October 26, 1999 after negotiation between the National Treasury Employees Union and the OR&R.  Under the Promotion Plan, an attorney wishing to be promoted to the GS-14 level must provide written notice to do so by submitting a

statement of qualification demonstrating that he or she meets the criteria for promotion. Among other criteria, an attorney is required to cite examples of work that "demonstrates that the Attorney is performing GS-14 level work and doing so independently and responsibly." (Def. First Mot., Exh. 1, at 1).

As plaintiff's supervisor, Ms. Brown reviewed plaintiff's promotion application. She solicited input from plaintiff's former supervisor, Mr. Harmon, who recommended plaintiff for promotion based on his work in the International Agreements group. Ms. Brown considered Mr. Harmon's input, but based her determination on the quality of plaintiff's work in the Value Branch. In an October 3, 2001 memorandum, Ms. Brown set forth her initial reasoning for determining that plaintiff was not qualified, at that time, for promotion to GS-14 within the Value Branch while determining that plaintiff would nonetheless be qualified for promotion within International Agreements. (see Def. First Opp., Exh. 3.) Despite finding plaintiff unqualified for promotion, she offered plaintiff a chance to supplement his application with work from the Value Branch, as plaintiff had submitted no Value Branch work product with his application. Subsequently, after plaintiff offered no supplement, Ms. Brown denied plaintiff's promotion application.

In November of 2001, plaintiff's union filed a grievance on plaintiff's behalf pursuant to Article 31 of the collective bargaining agreement challenging the propriety of defendant's decision to deny him a promotion. This proceeding, at first, raised issues of discrimination but these issues were later taken out of the case so they could be pursued separately. Plaintiff filed, pursuant to his union's collective bargaining agreement, a formal Equal Employment Opportunity ("EEO") complaint on January 31, 2002.

The arbitrator, after overseeing discovery and hearing from the parties, issued a 31 page opinion in which she decided that plaintiff was, based on his work product, unqualified for promotion under the promotion plan and that, therefore, defendant was justified in its denial of promotion.  Supporting her conclusion, the arbitrator made a number of factual findings.  First, the arbitrator found that Ms. Brown took plaintiff's newness to the Value Branch into consideration, and assigned plaintiff "the easiest cases available in the Value Branch in recognition of the learning curve that an attorney who was unfamiliar with the new subject matter would need to undergo." (Def. First Mot., Exh. 3, at 20, 23.).  Second, the arbitrator found that plaintiff was careless and inattentive, enumerated a number of his deficiencies, and found that he lacked abilities that any OR&R attorney should have, regardless of subject matter.  Id. at 24-25.  Third, the arbitrator found that, in one case, when plaintiff had made a critical error, he failed to accept responsibility for his mistake.  Id. at 25-26.  Finally, the arbitrator found that because of Ms. Brown's written and face-to-face feedback, plaintiff "could not have been unaware of his professional shortcomings in the 8 months leading up to his application for promotion." Id. at 23.

While plaintiff's grievances were pending, he continued to work.  Allegedly due to poor performance, plaintiff was placed on an Employee Proficiency Plan ("EPP") on May 14, 2002, which was rescinded on May 16, and replaced with a revised EPP on May 22. (see Def. First Mot., Exh 5.).  Under the EPP, plaintiff was given a 90-day period to demonstrate acceptable performance by completing six existing cases in order to demonstrate the required successful level of case closure, which is allegedly four cases per month.  Failure to complete the six cases could result in reassignment, demotion, or termination.  Plaintiff, on May 24, 2002, filed a

second formal EEO complaint, again pursuant to his union's collective bargaining agreement, this time alleging, among other things, retaliation for placement on the EPP.

Plaintiff failed to complete any of the six cases specified in the EPP. On or about August 26, 2002, defendant placed plaintiff on administrative leave, which continued until he was terminated on October 28, 2002. While on administrative leave, plaintiff could not come to work except as needed to consult with people concerning his grievances.

Plaintiff sought EEO counseling, pursuant to his statutory rights and not his bargaining agreement, related to his termination and was given the go-ahead to file a complaint. On and after January 8, 2003, the counselor attempted on several occasions to send plaintiff his Notice of Right to File via certified mail, but each attempt failed. The notice was eventually transmitted to plaintiff as an email attachment on February 20, 2003, and plaintiff confirmed receipt of the notice on February 24, 2003. On February 25, plaintiff was informed to follow the procedures set forth in the notice, which gave plaintiff 15 days to file. (Def. First Mot., Exhs. 10-13.) No complaint was filed until August 22, 2003. Plaintiff, meanwhile, had asked that his termination be taken into consideration during the review of his January and May complaints.

After a convoluted process, plaintiff's formal complaints of January and May were consolidated for review. Plaintiff's termination was not considered as part of that review  On June 6, 2003, Customs issued a final agency decision finding no discrimination and denying relief to plaintiff. The final agency decision authorized plaintiff to seek relief in the federal courts.

III.     ANALYSIS

    A.     Discrimination Claim

Title VII guarantees federal employees that "[a]ll personnel actions . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a).. Disparate-treatment claims, such as plaintiff's, are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999).

"Under this framework, the plaintiff must first establish, by a preponderance of the evidence, a 'prima facie case' of discrimination." Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1149 (D.C. Cir. 2004) (citing McDonnell Douglas, 411 U.S. at 802). To make out a prima facie case in this circuit, a plaintiff must establish that (1) he is a member of the protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. Teneyck, 365 F.3d at 1150. Additionally, when plaintiff alleges wrongful non-promotion, he must also establish that he does not lack the qualifications of the sought position and that there exists a vacancy in the sought position. See id. (citing Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358 n.44 (1977).

Once a plaintiff makes out a prima facie case, a presumption arises that plaintiff suffered unlawful discrimination. The defendant employer must then produce evidence of a legitimate, non-discriminatory basis for its actions. If the employer meets this burden, the McDonnell Douglas framework is exhausted and "the sole remaining issue is discrimination vel non." Id. at 1151 (citations omitted).

7

The defendant moves for summary judgment on the grounds that plaintiff has failed to demonstrate his qualifications for promotion. As evidence, defendant offer the arbitration decision that found plaintiff unqualified for a GS 14 promotion under the OR&R non-competitive promotion plan. Defendants argue that the decision precludes plaintiff from relitigating the issue of his qualifications for promotion under the doctrine of collateral estoppel or, alternatively, the decision should weigh heavily with this court and require the grant of summary judgment.

First, the court considers the applicability of collateral estoppel in this context. Collateral estoppel "preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate." Montana v. United States, 440 U.S. 147, 153-54 (1979). Generally, a Title VII plaintiff is entitled to de novo review in federal court of statutory discrimination claims initially brought before an arbitrator for decision pursuant to a contract. Alexander v. Gardner-Denver Co., 415 U.S. 36, 51, 59-60 (1974) ("The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums."); see also id. at 51 n.10 (stating that the policy reasons for requiring de novo review are "applicable to the doctrines of res judicata and collateral estoppel"). While subsequent Supreme Court decisions have repudiated Gardner- Denver's derogation of the arbitration process while declining to extend its application to other discrimination statutes, see Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991); Wright v. Universal Maritime Service Corp., 525 U.S. 70 (1998), this circuit continues to apply Gardner-Denver "within its field of application." Air Line Pilots Assoc., Int'l v. Northwest Airlines, Inc.,

199 F.3d 477, 484 (D.C. Cir. 1999).  One of Gardner- Denver's "fields" is the Title VII context where an earlier arbitration was conducted pursuant to a union's collective bargaining agreement as opposed to an individualized agreement.  Id. ("We see a clear rule of law emerging from Gardner-Denver and Gilmer: Unless the Congress has precluded his doing so, an individual may prospectively waive his own statutory right to a judicial forum, but his union may not prospectively waive that right for him.").

Collateral estoppel is not appropriate in this case.  Plaintiff now raises a Title VII claim and the previous arbitration occurred pursuant to a union-negotiated collective bargaining agreement in which contractual rights were determined.  Defendant's reliance on Judge Silberman's concurrence in Smith v. Horner, 846 F.2d 1521, 1525 (D.C.Cir. 1988) (Silberman, J., concurring) is misplaced.  The concurrence in Smith hardly calls for preclusion; rather, it suggests that, as with the arbitration proceeding in Gardner-Denver, an unrelated, earlier administrative proceeding would similarly lack preclusive effect.

While the arbitration in this case does not preclude plaintiff from pursuing his discrimination claim due to collateral estoppel, the arbitration, under Gardner- Denver, "may be admitted as evidence and accorded such weight as the court deems appropriate."  415 U.S. at 60.  The Court adopted

> no standards as to the weight to be accorded an arbitral decision, since this must be determined in the court's discretion with regard to the facts and circumstances of each case. Relevant factors include the existence of provisions in the collective-bargaining agreement that conform substantially with Title VII, the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators. Where an arbitral determination gives full consideration to an employee's Title VII rights, a court may properly accord it great weight. This is especially true where the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record. But courts

> should ever be mindful that Congress, in enacting Title VII, thought it necessary to provide a judicial forum for the ultimate resolution of discriminatory employment claims. It is the duty of courts to assure the full availability of this forum.

Id. at 60 n.21. Applying these criteria to plaintiff's case, the arbitrator's decision that plaintiff was unqualified for promotion under the plan can be accorded a great deal of deference. First, the arbitrator was largely making findings of fact about plaintiff's competency and performance. Second, the arbitrator issued a lengthy, well-reasoned written opinion, (Def. First Mot., Exh. 3.), setting forth reasons for her decision.

Ultimately, the weight of the evidence is not important for summary judgment purposes; it matters whether plaintiff can demonstrate the existence of a genuine issue of material fact. This, plaintiff has utterly failed to accomplish. There is no evidence that plaintiff was qualified for promotion to GS 14 in the Value Branch. Plaintiff can only offer evidence of his success in his old group, the International Agreements group. "[E]ach of the branches in our office is involved with different and highly technical areas of legal expertise." (Pl. First Opp., Exh 15, at 2.) Plaintiff's certification form indicates that he is certified for promotion in the International Agreements group, but not in the Value Branch. Plaintiff's high rate of case closures, (Pl. First Opp., Exh. 4.), is from a period of time, January of 1999 through December of 2001, during which he was mostly with the International Agreements group, not the Value Branch group. Plaintiff, in his promotion application, offered his supervisor no Value Branch work product to review, even when given the opportunity to supplement his application. The Value Branch award that plaintiff cites, (Pl. First Opp., Exh. 6.), does not establish his qualifications for promotion; it simply shows he was recognized for bravely taking on new work. Apparently, plaintiff's bravery outstripped his ability. There is no evidence, no statement from a coworker or

otherwise, attesting to plaintiff's ability to work at the GS 14 level in the Value Branch.

Plaintiff has therefore failed to make out a prima facie case of discrimination under Title VII for his non-promotion and summary judgment must be granted for defendant.

> B.      Retaliation Claim

Title VII retaliation claims, like discrimination claims, are analyzed under the <u>McDonnell Douglas</u> framework.  However, for retaliation claims "the prima facie requirements are slightly different": a plaintiff must establish (1) that he engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two.  <u>Brown v. Brody</u>, 199 F.3d 446, 452 (D.C. Cir. 1999).  Plaintiff's filing of a formal EEO complaint on January 31, 2002, (<u>see</u> Def. First Mot., Exh. 3, at 4-5.), is the alleged statutorily protected activity.  The defendant's placing plaintiff on the EPP, placing plaintiff on administrative leave, and terminating plaintiff's employment comprise the alleged adverse personnel actions.  Defendant moves for dismissal of plaintiff's retaliation claim on the grounds that plaintiff has failed to exhaust administrative remedies and on the grounds that plaintiff has failed to allege a sufficient adverse personnel action.

> 1.      Plaintiff has failed to exhaust administrative remedies

Generally, Title VII plaintiffs must exhaust the remedies available through administrative processes before calling on the federal courts for aid, <u>see</u> <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002); <u>Bayer v. U.S. Dep't. of Treasury</u>, 956 F.2d 330, 332 (D.C. Cir.1992). Federal employees are subject to an administrative process governed by special regulations:

> Under the regulations governing the administrative EEO complaint process, an aggrieved

11

> person is required to consult an agency EEO counselor within 45 days of the alleged discriminatory act, or, in the case of a personnel action, within 45 days of the effective date of the action. 29 C.F.R. § 1614.105. This 45-day requirement operates like a statute of limitations and may be tolled if the plaintiff pleads and proves equitable reasons for noncompliance. Bayer, 956 F.2d at 332-33.
>
> Should the matter remain unresolved after informal counseling, the aggrieved person may file a formal discrimination complaint with the agency, which must be investigated and disposed of within the earlier of 180 days of the last amendment to the complaint or 360 days after the filing of the original complaint. 29 C.F.R. § 1614.105-106. If the aggrieved person is dissatisfied with the final disposition of his complaint, she may file a civil action within 30 days of receipt of the notice of final action by the agency. 42 U.S.C. § 2000e-16(c).

Bowie v. Ashcroft, 283 F. Supp. 2d 25, 33 (D.D.C.2003).

Most courts before Morgan had "determined that a plaintiff is not required to exhaust . . . administrative remedies with respect to claims of retaliation that occurred after the filing of an administrative complaint." Marshall v. James, 276 F. Supp. 2d 41, 51 (D.D.C. 2003) (citing Sussman v. Tanoue, 39 F. Supp. 2d 13, 21 (D.D.C. 1999); Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992) (citing Kirkland v. Buffalo Bd. of Educ., 622 F.2d 1066, 1068 (2d Cir. 1980); Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970); Malhotra v. Cotter & Co., 885 F.2d 1305, 1312 (7th Cir. 1989) (holding that allegations of retaliation for the filing of an EEOC charge is discrimination "like or reasonably related to . . . and growing out of such allegations."); Wentz v. Maryland Casualty Co., 869 F.2d 1153, 1154-55 (8th Cir. 1989); Brown v. Hartshorne Public School District No. 1, 864 F.2d 680, 682 (10th Cir. 1988)). As the Seventh Circuit explained:

> Having once been retaliated against for filing an administrative charge, the plaintiff will naturally be gun shy about inviting further retaliation by filing a second charge complaining about the first retaliation. . . .We [therefore] join the other circuits that have spoken to the question in adopting the rule that a separate administrative charge is not pre-requisite to a suit complaining about retaliation for filing the first charge.

However, Morgan rejected the so-called continuing violation doctrines that allowed plaintiffs to recover for discrete acts of discrimination or retaliation that had not been separately exhausted but were "sufficiently related" to a properly exhausted claim. Morgan, 536 U.S. at 105. The Morgan Court was emphatic that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law," Morgan, 536 U.S. at 108 (citing Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980)), and that recovery was precluded "for discrete acts of discrimination or retaliation that occur outside the statutory time period," id. at 105.[2]

Although Morgan bars recovery for, on its facts, discrete acts occurring before the statutory time period, Morgan has, on the whole, been understood to also bar discrete acts occurring after the time period, after the filing of an administrative complaint, when a plaintiff does not file a new complaint or amend the old complaint but instead presents these acts for the first time in federal court. Martinez v. Potter, 347 F.3d 1208, 1210-11 (2003); Velikonja v. Mueller, 315 F. Supp.2d 66, 74 (D.D.C. 2004); Bowie, 283 F. Supp. 2d at 34; see also Delisle v. Brimfield Tp. Police Dept., 94 Fed. Appx. 247, 258 (6th Cir. 2004) (Batchelder, J., dissenting). But see Delisle, 94 Fed. Appx. 247, 252-53 (reaching the opposite conclusion without mentioning the Tenth Circuit's decision in Martinez, thus creating a circuit split); Higbee v.

---

[2] Morgan talks of a statutory period because it dealt with the Title VII provision concerning private employers that sets forth the filing time limits in the statute itself. For federal employees, the time limits come from EEOC regulations. Although the source of the time limits for federal and private employees are not identical, "the principles set forth [for private employers in Morgan] have been applied to cases involving the 45-day deadline for federal employees' claims." Velikonja v. Mueller, 315 F. Supp.2d 66, 74 n.3 (D.D.C. 2004) (citing Burkett v. Glickman, 327 F.3d 658, 660 (8th Cir.2003); Jarmon v. Powell, 208 F. Supp. 2d 21, 29 (D.D.C.2002)).

Billington, 246 F. Supp. 2d 10, 16-17 (D.D.C. 2003) (not addressing the identical question but cautioning that "Morgan deals with the timeliness of the administrative complaints that were made and not with whether the failure to file any administrative complaint should be excused.").

Given Morgan's emphasis on strict adherence to procedure and on the severability of discrete acts such as termination, failure to promote, and denial of transfers, see 536 U.S. at 114, and given Morgan's rejection of the various continuing violation doctrines of the Circuit Courts, it makes sense to apply Morgan to bar subsequent discrete acts that a plaintiff fails to exhaust in the administrative process.  Requiring a plaintiff to exhaust each discrete claim of discrimination or retaliation "comports with the purpose of the exhaustion doctrine to give the agency notice of a claim and [the] opportunity to handle it internally and ensures that only claims plaintiff has diligently pursued will survive.  Velikonja, 315 F. Supp. 2d at 74 (citations omitted).  Further, requiring exhaustion encourages internal, less costly resolution of Title VII claims.  Martinez, 347 F.3d at 1211 (citing Brown v. Gen. Servs. Admin., 425 U.S. 820, 832-35 (1976).

Therefore, in order to survive the instant motion to dismiss, plaintiff must demonstrate that he exhausted his administrative remedies with respect to each discrete act of retaliation. Plaintiff will be unable to maintain any retaliation claim that he failed to exhaust.  Under his bargaining agreement, plaintiff filed a formal EEO complaint on January 31, 2002 that alleged discriminatory non-promotion and another complaint on May 24, 2002 that alleged, among other things, retaliation by placing plaintiff on the EPP.  Under the statute and regulatory provisions of 29 C.F.R. 1614, plaintiff filed a formal EEO complaint on August 22, 2003 that alleged retaliation by termination.

Based on the May 24, 2002 complaint and its resolution, plaintiff has exhausted his claim

of retaliation by placement on the EPP.

Plaintiff has failed to exhaust with respect to his other claims because none of plaintiff's EEO complaints makes charges concerning his placement on administrative leave and because plaintiff's complaint claiming retaliatory termination was not timely filed within the 15 day window.

Plaintiff makes several arguments for why his termination claim should still proceed. First, plaintiff asserts that email notification of a right to file a complaint is ineffective. Plaintiff cites no legal authority for this position. Where, as here, plaintiff acknowledged receipt of the email containing the notice of right to file and yet chose to file nothing, the court holds that the failure to exhaust was plaintiff's own. Second, plaintiff asserts that his February 25, 2003 and March 11, 2003 requests for consolidation of his termination complaint with his earlier complaints should give this court authority to consider his termination claim. The court has no such authority. Plaintiff's earlier complaints were filed under his union's bargaining process while his termination complaint was filed under the statutory process. Having elected to pursue the termination complaint under the statutory process, plaintiff had to proceed thoroughly under the statutory process on that claim or proceed not at all. 29 C.F.R. 1614.303 (a grieving party "must elect to raise the matter under either part 1614 or the negotiated grievance procedure, but not both").

        2.    Adverse personnel actions

As noted earlier, a plaintiff making out a case of retaliation must allege an adverse personnel action. <u>Brown</u>, 199 F.3d at 452. An adverse personnel action

> constitutes a significant change in employment status, such as hiring, firing, failing to

promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.  Compare Crady v. Liberty Nat. Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993) ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."), with Flaherty v. Gas Research Institute, 31 F.3d 451, 456 (7th Cir. 1994) (a "bruised ego" is not enough); Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 887 (6th Cir. 1996) (demotion without change in pay, benefits, duties, or prestige insufficient) and Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994) (reassignment to more inconvenient job insufficient).

Id. at 456-57 (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1999)).

Plaintiff claims that placement on the EPP, placement on administrative leave, and termination were each adverse personnel actions.  After consideration of exhaustion, only placement on EPP remains a viable retaliation claim.  Defendant argues that placement on the EPP was not adverse action.

Placement on the EPP did not constitute an adverse personnel action.  The EPP did not alter plaintiff's title, compensation, or benefits.  Nor did the EPP result in a significant chance in plaintiff's responsibilities: it simply assigned to plaintiff a group of six cases that plaintiff would need to close in order to meet the defendant's alleged standard of having attorneys complete four cases per month.  The cases assigned were typical cases for an employee in plaintiff's position and plaintiff had already begun work on several of the cases.  Plaintiff may claim that he interpreted his placement on EPP as a threat of future reassignment, demotion, or termination; however, while such outcomes were plausible if plaintiff could not perform under the EPP, none of these outcomes was necessary, these outcomes would occur only after subsequent employer action, and plaintiff had ultimate control over his future with defendant.

C.  Conclusion

Plaintiff has failed to state a viable Title VII claim because he has failed to exhaust administrative remedies with respect to placement on administrative leave and termination and because placement on the EPP does not constitute adverse employment action.

III.  CONCLUSION

For the foregoing reasons, Defendant's Motion [12] to Dismiss Plaintiff's First Amended Complaint, or in the Alternative, for Summary Judgment shall be GRANTED, the First Amended Complaint shall be DISMISSED WITH PREJUDICE, and judgment shall be entered for defendant and against plaintiff.  A separate Order and Judgment shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, March 31, 2005.